May it please the court. This is an immigration case involving two distinct issues. First of all, whether the petitioner has been convicted of an aggravated felony, and secondly, whether the petitioner is a United States citizen. On October 1, 2007, an immigration judge in San Diego found that the petitioner had not derived citizenship through his U.S. citizen father because his father was not a U.S. citizen at the time of his birth. The immigration judge also found that the petitioner's conviction under section 243.4a of the California Penal Code for sexual battery was an aggravated felony under subsection 101-843-F of the Immigration and Nationality Act for Crime of Violence, but terminated the aggravated felony charge under section 101-843-A for sexual abuse of a minor. A timely appeal was filed to the Board of Immigration Appeals, and three arguments were raised at that time. First, that the petitioner was a citizen under 8 U.S.C. section 1409. Secondly, that he was a citizen under 8 U.S.C. 1431, also known as the Child Citizenship Act of 2000. And third, that section 243.4a, sexual battery, was not a crime of violence under the aggravated felony ground. On January 24, 2008, the Board of Immigration Appeals dismissed all three arguments raised by the petitioner. The Board of Immigration Appeals and the immigration judge, in their decisions, relied heavily upon Liz B. V. Gonzalez to find that the section 243.4a conviction was not a crime of violence under the aggravated felony ground. The California statute, under which the petitioner was convicted, states that physical contact or touching be neither direct nor violent. As the Court's well aware, the definition, of course, is that a sexual battery is an aggravated felony crime of violence. And there are two subsections, subsection a, which is not the subject of this appeal, and the Court has found that sexual battery does not fall under subsection 16a, and also subsection 16b. The Liz B. Court used subsection 16b. Please put that mic up a little higher. I'm sorry. I meant to raise it. I'm getting it through the earphone, so when you get away from the mic, it fades on me. I apologize, Your Honor. Is that better? I apologize. Is that better? I'm tall, so I didn't realize it was. We were having trouble most of the morning with this. But Liz B. says it's a crime of violence, right? Liz B. does, Judge Reinhart, and the problem in the Liz B. holding is really twofold. First of all, it didn't look to California state law to find that the Liz B. seizes on the term unlawful restraint in the California law. But Liz B. is a Ninth Circuit case, right? Yes. And so we're bound by it. You're not. Is that right or wrong? You're not, Your Honor. Unless it's something that has come since Liz B. Not necessarily. As we've argued in our brief, and this Court has held in Ortega-Mendez, if there is intervening higher authority... Well, that's what I said, unless it's something that came afterwards. Well... That's not as intervening. Leocall actually predates Liz B. Well, then it's not intervening. Well, it's intervening from the sense that the Supreme Court decision in Leocall contradicts Liz B.'s finding. It's not intervening. We're bound by Liz B., as you said, unless it's something intervening. Something that came before Liz B. is not intervening. Well, in other words, your argument is Liz B. was wrongly decided in the light of Leocall, right? Correct. Well, it doesn't make any difference whether, you know, you or I think it's right or wrong. I mean, we can't ignore it. All we can do is ask for an inventory. That certainly would solve the problem. Well, I'm not so sure it would certainly solve the problem. You haven't seen our in fact decisions. I've actually been in an en banc proceeding not too long ago. And then besides, you know, I mean, Liz B. specifically discusses Leocall, right? It does. So it recognizes that Leocall is there. That's all the more reason why we can't ignore it. Okay. Meaning Liz B. There's a tension there, and I just wanted to point out, too, that the, as I started initially saying, that the California state law, when it defines unlawful restraint in people being rant and cited in a brief, says that that restraint can be by an authority figure or by a psychological. Well, let me just suggest to you, you've got just under five minutes left, and we all agree that we can't overrule Liz B. So why don't you try something else? There you go. The second claim that the petitioner has is whether or not he's a United States citizen. Originally there were two claims advanced. The only claim for citizenship before the court right now is under the Child Citizenship Act. What we did in our filing to the Board of Immigration Appeals is we asked for a remand so the immigration judge could consider in the first instance, which he did not, whether the petitioner had a claim for citizenship under the Child Citizenship Act. There are factual issues which are unresolved regarding that claim, and the board decided to resolve that in the first instance. When we raised it on appeal, they did consider that claim under the CCA, and in a paragraph decision dismissed it. There are three elements under the Child Citizenship Act. First is that at least one parent is a citizen of the United States by birth or naturalization. There's no dispute as to that. Right. There's no dispute. The Board of Immigration Appeals knocked it out under two other issues. The second element is that the child is under 18 years of age. In this case, the petitioner turned 18 on the date of enactment, which is February 27th. That has not been resolved, and I think the government brief admits that there is no clarification as to what law would apply as far as reckoning when somebody turns 18, in this case, on the date of the passage or the effective date of the statute. No point in returning that to an ALJ or an IJ. It's a question of law that the BIA resolved. You may disagree with the resolution, and you could ask us to reach a different legal quest for resolution. But there's no factual issue involved. That may be. The second point is that the child is residing in the United States in the legal or physical custody of the citizen parent pursuant to a, quote, lawful admission for permanent residence. That is also a fact which was not resolved by the immigration judge, by the trial court, as to what is pursuant to a lawful admission for permanent residence. The petitioner had an application pending for permanent residence. It was ultimately granted after the Child Citizenship Act was effective. So the Board of Immigration Appeals said, well, since he wasn't a lawful permanent resident prior to the effective date of the Child Citizenship Act, we will resolve that in the first instance and dismiss that claim also. I think that is a material issue which should be tried before a trial court, and the petitioner has not had that opportunity to do so. I'll resolve the balance of my time for rebuttal. Thank you. Thank you, Counsel. Good afternoon, Your Honors. May it please the Court, Charles Tanner for the Attorney General. I believe there's only a simple legal question for the Court to decide, and that is whether Mr. Gonzalez-Ramirez obtained citizenship under the Child Citizenship Protection Act. Lisbee, as Your Honors pointed out, that's controlling. There's no factual issues here raised regarding his citizenship. The undisputed facts are that he was not admitted as a lawful permanent resident until after he turned 18. The statute requires that all three requirements must have been fulfilled at which time you obtained citizenship. Your parent must be a citizen, you must be under 18, and you must be residing pursuant to a lawful admission for permanent residence. Here, Mr. Gonzalez-Ramirez was present in the United States without inspection. He was actually removable the whole time. Moreover, he was not under the age of 18 at any time in which the citizen CCA, I'll call it, was in effect. At no point before February 17th. There's no law on that. You're just sort of depending on a common-sense approach, aren't you, on that question? Yes. I think there is, as I noted in the brief, that for immigration purposes, you turn 18 or you reach a certain age. I'm not aware of any federal law on that, as far as it applies in the immigration context. As I point out, basically there are two rules, a common law rule and a birthday rule. The common law rule says you reach an age the day before your birthday. The birthday rule says you reach it on the first moment of your birthday. In either event, he turned 18 under either rule. He turned 18 at the earliest moments of February 17th, 2002, which was when the Child Citizenship Act came into effect. So he was not under the age of 18, under the plain meaning of the statute. And the plain meaning of the statute and just the meaning of the statute generally, I think it's one point that's important to note, that because this is a citizenship case and this is not, for example, a claim for some form of relief, the ordinary rule that this Court sometimes employed to say we will resolve ambiguities in favor of the alien, that does not apply in citizenship when construing citizenship statutes. Those statutes have to be strictly construed and resolve doubts in favor of the United States, the reason being that once citizenship is granted, it's not easily taken away. And here I'm not sure how that would work when we're talking about a sort of citizenship by statute. So I'm not sure that there's a denaturalization option exactly in this circumstance. So for those reasons, it's simply a matter of statutory construction. The undisputed facts are that he turned 18 on February 17th, 2002, and he was at that time not admitted for lawful permanent residence. So those are two separate statutes, aren't they? One is the under 18, the other is a separate requirement as a lawful admission. Is that right? Right. But they must all ‑‑ yeah, the way the statute reads is the following conditions have been fulfilled, and they're three separate conditions. One, at least one parent of the child is a citizen of the United States, whether by birth or denaturalization. Two, the child is under the age of 18 years. Three, the child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence. So here ‑‑ Well, when you say pursuant to lawful admission, that could mean lawful admission of the parent, couldn't it? No, I believe that the ‑‑ no, because the child, I believe that pursuant to a lawful admission is modifying the child. It's an adverbial phrase describing the child's residence. The child is residing in the United States pursuant to the citizen parent, of course. There's no issue about lawful permanent residence because he's a citizen. So that wouldn't ‑‑ I think it's modifying for a child. No, it fairly modifies the child. The child has to be lawfully admitted. Yes, that's the respondent's position. And the reason is, is if you look at the prior version, former INA 321, there was this sort of an analogous provision granted that was enacted prior to the whole concept of admission back in the days of entry. Why does a child have to be under the age of 18 when he's ‑‑ when condition 3 is met? Because I think that the way that the statute is worded is that if it's not the case that he must be under the age of 18 when he's admitted for lawful permanent residence status, the under 18 requirement is meaningless. Because every ‑‑ that is, say you're, you know, you have a parent who sometimes naturalizes, and then at some point you're admitted as a lawful permanent resident. Well, if that's the case ‑‑ As long as you have resided in the United States before you were 18. Well, Your Honor, if either ‑‑ I don't think that the statute admits a reading where ‑‑ I mean, it could say the child is residing in the United States at the age of 18, but it doesn't say that. It could, but it does not. And I think that's the important distinction is that the only way to read the age of 18, that is the paragraph 2, the child is under the age of 18, it has to be ‑‑ it's a separate requirement that you can't, without eliminating it, say that you can be admitted at any time later on in life. Because there's nothing in the statute that requires ‑‑ that if it permits that reading, it doesn't prohibit the reading that ‑‑ or require any reading that you be residing while under the age of 18. It's simply they're separate provisions. And, again, when you look at the prior law, that was the case, that you have to be under the age of 18. One of the things that the CCA did was it got rid of sort of the subjective and confusing aspect of when a child begins residing pursuant to a lawful admission. Begins residing lawfully because the CCA came after ARREA, came after the introduction of the concept of admission, which applies to each individual that enters the United States. So not only parents, but also children, when they enter, they are themselves inspected and receive authorization pursuant to the admission requirements and are themselves individually admitted in their own right. Well, like many immigration statutes, it's drafted poorly, let's put it, in kind terms. Sure. But it simply doesn't say in Section 3 that that has to be under the age of 18. It could be in, I guess, is minority still 21, or is it 18 into the statute? It varies throughout the INA. I believe a child is, if you're living with your parents and unmarried, I think it's 21. Okay. But it depends and it moves around. The point is that this section, what it does not permit is it does not permit. What it doesn't, I mean, you can't just sometime later in life. If he became a legally admitted person between the age of 18 and 21, you could easily read the statute as applying to him. Except that then you would not be under the age of 18. I mean, everyone is. No, not at that time. Right. And that is a requirement that the child be under the age of 18. And the fact is, is that if you read, if you, if you, if everyone meets the requirement that they were at some point under the age of 18, so. No, not living here under the age of 18. You have to live here before you're 18. Well, that's. And maybe be legally admitted before you're 21. Well, there's nothing in the statute that would, that requires that. And I'm not sure how, where. No, it doesn't require it. It's just one possible interpretation of an artfully drawn statute. It is perhaps an interpretation. But given that it is a statute granting citizenship, it has to be construed narrowly and strictly with the terms of the statute. Okay. Your time is up. Thank you. Thank you, Your Honor. Briefly, I wanted to respond to a, I wanted to respond to a question from Judge Tashima. You mentioned, Judge Tashima, that perhaps somebody could be admitted and then be in the custody of a parent who is a lawful permanent resident. That's exactly true. In the naturalization context, you must have lawful permanent residence for a period of five years or three years if you're married to a U.S. citizen. Which this petitioner's father was not. So there was a minimum five-year period when he was a lawful permanent resident. So the statute perhaps does take into account the fact that there can be a parent who is a lawful permanent resident. The first clause permits citizenship through birth or naturalization. So that could have been contemplated by the statute. Judge Reinhardt, you asked about whether the age is 21 or 18. Mr. Cantor responded, it does change. There are three titles under the Immigration and Nationality Act, Title I, II, and III. Title III deals with citizenship and generally defines a minor as 18 or younger. Under Title I and II, which are for visas and other sections, it's generally defined as 21 or under. So I think that's where there is some tension in the statute. I don't have anything else to argue. I have some 20-some seconds left here if there are any other questions. Thank you very much. Thank you. Thank you. All right. Case is here. It will be submitted. The Court will stand and recess for the day.
judges: Reinhardt, Tashima, Bright